FILED

2014 Feb-07  AM 09:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **MASONRY ARTS, INC.,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:13-CV-01381-RDP** |
| | } | |
| **ALL SOUTH PRECAST, LLC, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

**MEMORANDUM OPINION**

This case is before the court on Plaintiff's Motion to Remand (Doc. #7), filed on August 2, 2013.  The Motion (Doc. #7) has been fully briefed (Docs. #10 & #12) and is properly under submission.  For the reasons outlined below, the Motion (Doc. #7) is due to be denied.

**I.      Background and Relevant Facts**

Plaintiff Masonry Arts, Inc. initiated this lawsuit against Defendants All South Precast Services, LLC, Robert M. Carroll, Charles Thomas Lancaster, and USF Insurance Company on June 12, 2013 in the Circuit Court of Jefferson County, Alabama, Bessemer Division. (Doc. #1, Ex. A).  Defendant USF filed a Notice of Removal (Doc. #1) on July 24, 2013, and, the next day, also filed an Answer and Counterclaim (Doc. #3).  Plaintiff then filed the operative Motion to Remand (Doc. #7) on August 2, 2013.

This suit arises out of a contract between Plaintiff Masonry Arts and Defendants All South, Carroll, and Lancaster, under which Defendants agreed to complete various architectural precast installations for Masonry Arts. (Doc. #7 at 2).  As part of their agreement, All South also allegedly (1) agreed to indemnify Masonry Arts against any lawsuits flowing from the installation work, and (2) named Masonry Arts as an "additional insured" under its insurance

policy with Defendant USF. (Doc. #7 at 2-3).  Subsequently, Defendants All South and Carroll failed to "perform as expected," and Masonry Arts was forced to spend $20,000 to finish the installations. (*Id.*).

In a separate, but intertwined transaction, Caps Funding, LLC ("Caps") purchased Defendant All South's accounts receivable as part of a financing arrangement. (Doc. #7, Ex. A at 3-4).  Included among the accounts purchased were those related to All South's work for Masonry Arts, which totaled $77,715. (*Id.* at 4).  According to Caps, Masonry Arts agreed to make its payments for All South's work directly to Caps. (*Id.*).  However, as a result of All South's failure to perform under their contract, Masonry Arts only paid a portion ($31,500) of its contractual obligation ($77,715), and that portion was paid to All South, rather than Caps. (*Id.*; Doc. #7, Ex. B).  Consequently, Caps brought suit against All South and Masonry Arts in South Carolina state court, seeking $77,715 in accounts receivable, pre-judgment interest on such accounts, costs, attorney's fees, and punitive damages. (Doc. #7, Ex. A at 4-5).

In the present suit, Masonry Arts seeks (1) damages (both compensatory and punitive) related to All South's unfinished installation work, and (2) indemnification from liability in the Caps suit. (Doc. #1, Ex. A at 4-10).  In pursuit of such remedies, Plaintiff alleges breach of contract (Count I), negligence (Count II), fraud in the inducement (Count III), fraud (Count IV), suppression (Count V), indemnity (Count VI), additional insured (Count VII), and common law indemnity (Count VIII). (*Id.*).

## II.    Standard of Review

It has long been recognized that federal courts are courts of limited jurisdiction. *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).  Indeed, federal courts may only exercise jurisdiction conferred upon them by Congress. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706,

2

716 (1996).  Anytime a "federal court acts outside its statutory subject matter jurisdiction, it violates the fundamental constitutional precept of limited federal power." *Uni. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 212 (1971)).

Generally, any action filed in state court, over which a district court would have original jurisdiction, "may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The burden of establishing subject matter jurisdiction for the purpose of a valid removal to this court is squarely on the removing party. *Friedman v. N.Y. Life Ins. Co.*, 410 F.3d 1350, 1353 (11th Cir. 2005).  Federal courts strictly construe removal statutes and resolve all doubts in favor of remand. *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1328-30 (11th Cir. 2006).

## III.    Discussion

In instant case, Defendant USF's removal is premised on diversity jurisdiction,[1] which requires complete diversity of citizenship among the parties and an amount in controversy that exceeds $75,000. 28 U.S.C. § 1332.  There is no dispute in this case that the parties are of diverse citizenship; the sole issue is whether the suit involves the requisite amount in controversy. (Doc. #7 at 4).

In a case such as this one, where a plaintiff has not demanded a specific amount of damages in the initial pleading, "the removing defendant must prove by a preponderance of the

---

[1] In its Notice of Removal (Doc. #1, ¶ 7), Defendant also argued that the court had federal question jurisdiction over the suit pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, which provides the basis for Defendant's Counterclaim.  However, Defendant has since backed away from this position, correctly recognizing in its Response in Opposition (Doc. #10) that the Declaratory Judgment Act "does not establish an independent basis for federal jurisdiction in the absence of some independent source of jurisdiction, such as diversity jurisdiction." This legal notion is clearly articulated in *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) (holding that the invocation of the Declaratory Judgment Act does not, in and of itself, transform a suit into one involving a federal question), and, as a result, Defendant must rely on its theory of diversity jurisdiction in order to support removal in this case.

evidence that the amount in controversy exceeds the jurisdictional requirement." *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001). "[A] removing defendant is not required to the prove the amount in controversy beyond all doubt or to banish all uncertainty about it," *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010), but rather must prove that "the amount in controversy *more likely than not* exceeds the jurisdictional requirement." *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996) (emphasis added).

Here, Defendant USF has met its burden of showing that the amount in controversy exceeds $75,000. As USF adroitly notes in its Notice of Removal (Doc. #1 at ¶¶ 4-6), Plaintiff's suit primarily seeks two remedies: (1) damages flowing from Defendant All South's failure to finish its installation project, and (2) indemnification from liability in the Caps suit. When the potential value of these remedies is fully considered, it becomes clear that the amount-in-controversy requirement is satisfied in the present case.

The amount in controversy in this case partially consists of the damages sought by Plaintiff Masonry Arts in connection with All South's incomplete work. Defendant USF cursorily pegs the value of these damages at $20,000 (*i.e.*, the cost incurred by Masonry Arts to finish the job begun by All South) (Doc. #1 at ¶ 6), and Masonry Arts readily agrees that its claim for damages is worth $20,000 (Doc. #7 at 5). However, it is evident on the face of Plaintiff's Complaint (Doc. #1, Ex. A) that the potential damages far exceed the figure identified by the parties. In addition to $20,000 in completion costs, Plaintiff also apparently seeks return of the monies paid to All South prior to its abandonment of the job. (Doc. #1, Ex. A at 5—"All South had a duty to . . . return the money [$31,500] wrongfully possessed . . . All South breached said duty."). Likewise, Plaintiff requests punitive damages, which "must be considered [when determining the jurisdictional amount in controversy in diversity cases], unless it is apparent to a

4

legal certainty that such cannot be recovered." *Holley Equipment Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987) (internal citations omitted).  Because punitive damages are potentially recoverable in the context of Plaintiff's claims for fraud in the inducement (Count III) and fraud (IV), *Id.* (citing *Mobile Dodge, Inc. v. Alford*, 487 So.2d 866, 871 (Ala. 1986)), it would be appropriate to consider punitive damages in the computation of the amount in controversy.  It is unnecessary at this time, however, for the court to forecast the ultimate value of Plaintiff's claims for damages.

Indeed, regardless of whether the potential damages sought by Plaintiff exceed the figure agreed upon by the parties ($20,000), indemnification in the Caps litigation is worth at least $77,715 to Plaintiff, an amount claimed which satisfies the amount-in-controversy requirement all by itself.  That number is arrived at by totaling the various invoices submitted to Masonry Arts by All South, all of which Caps seeks payment on in its suit against the two entities. (Doc. #1, Ex. C at 4-6).  Plaintiff Masonry Arts acknowledges that Caps seeks $77,715 in accounts receivable and that the damages sought by Caps are properly attributable to the jurisdictional amount in controversy in the present case, as a result of its own claims for indemnity. (Doc. #7 at 5-6).  Nevertheless, Plaintiff argues that its payments of $31,500 to All South prior to the abandonment of the installation project should be subtracted from the damages sought by Caps when determining the amount in controversy. (Doc. #7 at 7—"[T]he record shows that Masonry Arts has already paid $31,500 to All South Precast Services, LLC.  After deducting the amounts Masonry Arts has already paid ($31,500.00) from the total damages sought in the underlying suit ($97,715.00), it is patently evident that the amount in controversy is not satisfied.").[2]   This

---

[2] In support of its position, Masonry Arts includes copies of two checks made out to All South for a total of $31,500 in Exhibit B of its Motion to Remand (Doc. #7).  Defendant USF objects to the contents of Exhibit B, arguing that the checks should not be considered because of their lack of authentication and has sought to have them removed from the record by way of a Motion to Strike (Doc. #11).  However, as detailed above, whether or not

argument is unpersuasive.  The basic thrust of Caps' suit is that it was contractually entitled to $77,715 worth of accounts receivable, but received nothing from the entities responsible for payment of the contractual obligation (*i.e.*, All South and Masonry Arts).  That one of the entities (Masonry Arts) made payments to another entity (All South) in the amount of $31,500 does not diminish the damages claimed by Caps, nor does it reduce the entities' potential liability in Caps' suit.  It may have been the intention of Masonry Arts that its payments to All South eventually reach Caps, but, in actuality, based upon the well-plead Complaint, the status of the unpaid accounts remains unchanged.  Because the value of indemnity in the Caps' case is at least $77,715,[3] the amount-in-controversy requirement is satisfied in instant suit.

## IV.    Conclusion

For the reasons outlined above, Plaintiff's Motion to Remand (Doc. #7) is due to be denied.  Additionally, Defendant's Motion to Strike (Doc. #11) is due to be administratively terminated.  A separate order consistent with this memorandum opinion will be entered.

**DONE** and **ORDERED** this February 7, 2014.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

---

Masonry Arts paid $31,500 to All South has no bearing on whether the amount-in-controversy requirement is satisfied.  Because the authenticity of the copies set forth in Exhibit B is not relevant to the court's analysis, Defendant's Motion (Doc. #11) is rendered moot and is due to be administratively terminated.

[3] The court declines to explore the value of indemnification in any more depth, but notes that Caps additionally requests pre-judgment interest, punitive damages, attorney's fees, and costs, all of which potentially push the amount in controversy even further past the required, statutory benchmark. (Doc. #1, Ex. C at 4-6).